
1  Donald G. Norris (SBN 90000)
   dnorris@norgallaw.com
2  Douglas F. Galanter (SBN 93740)
   dgalanter@norgallaw.com
3  NORRIS & GALANTER LLP
   523 West Sixth St., Suite 716
4  Los Angeles, CA 90014
   Telephone: 213.232.0855
5  Facsimile: 213.286.9499

6  Attorneys for Plaintiffs

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 JESUS PIMENTEL, an individual,         Case no.
   DAVID R. WELCH, an individual,
12 and all persons similarly situated,
                                          <u>CLASS ACTION COMPLAINT FOR
13             Plaintiffs,                DAMAGES AND DECLARATORY
                                          AND INJUNCTIVE RELIEF FOR
14       vs.                              VIOLATIONS OF THE EXCESSIVE
                                          FINES AND DUE PROCESS
15 CITY OF LOS ANGELES,                   CLAUSES OF THE UNITED
                                          STATES AND CALIFORNIA
16             Defendant.                 CONSTITUTIONS;</u>

17                                        DEMAND FOR JURY TRIAL

18

19

20

21

22       Plaintiffs Jesse Pimentel and David R. Welch, individually and on behalf

23 of the class of similarly situated persons identified in this complaint, allege as

24 follows:

25              <u>JURISDICTION AND VENUE</u>

26       1.   This is a class action seeking damages and declaratory and injunctive

27 relief for violations by the City of Los Angeles of the Excessive Fines and Due

28 Process Clauses of the United States Constitution and the analogous provisions

1  of the California Constitution arising from the City charging those who receive
2  tickets for expired parking meters disproportionally excessive penalties.
3      2. The action arises under 42 U.S.C. §1983. Jurisdiction is conferred
4  upon this Court by 28 U.S.C. §§ 1331 and 1343. Supplemental jurisdiction
5  exists over plaintiffs' state law claims under 28 U.S.C. § 1367.
6      3. In July 2013 plaintiffs duly served claims against defendant under
7  the appropriate California Government Code sections. Defendant failed to
8  timely respond, so those claims were denied as a matter of law.
9      4. Venue is proper under 28 U.S.C. § 1391(b).

## PARTIES

11     5. Plaintiffs Jesus Pimentel ("Pimentel") and David R. Welch
12 ("Welch") are individuals residing in the County of Los Angeles. Both of them
13 work in downtown Los Angeles.
14     6. At all times herein mentioned defendant City of Los Angeles
15 ("City") was and is a municipal corporation duly organized and existing under
16 the laws of the State of California.

## FACTS

18     7. On the afternoon of May 29, 2013 plaintiff Pimentel parked his car
19 on Eighth Street in downtown Los Angeles. Pimentel paid the parking meter
20 where he parked a sum of money he estimated would be sufficient to cover the
21 time period that he intended to park. On information and belief at approximately
22 3:10 p.m. that same afternoon a City employee issued parking citation number
23 4207863903 to Pimentel for an expired parking meter under section 88.13(b) of
24 the Los Angeles Municipal Code (the "Code") because the parking meter had
25 expired. Under section 89.60 of the Code the initial penalty was set at $63.00.
26     8. On or about June 21, 2013 the City issued and then mailed to
27 Pimentel a Notice of Delinquent Parking Violation advising that the due date to
28 pay the initial $63.00 penalty was July 5, 2013. Said Notice also warned that

failure to pay the parking penalties by the due date "will result in the City of Los Angeles imposing increased penalties and the withholding of your vehicle registration by the Department of Motor Vehicles." The Notice further advised that the "City may also subject your vehicle to immobilization (booting) or impoundment (CVC 22651.7, 22651(i), or a civil judgment (CVC 40220)."

9. Pimentel did not pay the initial $63.00 penalty by the July 5, 2013 due date. On information and belief the City then likely mailed another notice to Pimentel on a date unknown to plaintiffs assessing an additional 100% penalty, pursuant section 89.60 of the Code, so that the cumulative penalties increased to $126.00.

10. Because Pimentel had not paid the $126.00, on or about August 23, 2013 the City mailed Pimentel a "Delinquent Status" notice under section 89.60(b) of the Code, which purported to impose an additional, third penalty of $28 under section 89.60(b) of the Code (although that section provides for an additional penalty of $26), increasing the "total fine and penalty" to $154.00. This notice further assessed an additional $21.00 "collection fee" on Pimentel, and advised that the "total due" was $175.00.  The notice further advised that "**The Department of Motor Vehicles has been notified to withhold registration of your annual vehicle registration** pending resolution of the citations" and that "If you have delinquent citations, your vehicle may be seized." Finally, the notice advised that failure could subject Pimentel "to further collection activity such as a civil judgment or an interception of your state tax refunds."

11. Pimentel eventually paid the $175.00 "total due" to the Department of Motor Vehicles in order to be able to register his car.

12. On the morning of February 25, 2013 plaintiff David R. Welch parked his car in downtown Los Angeles. Welch paid the parking meter where he parked a sum of money he estimated would be sufficient to cover the time

1 period he intended to park. On information and belief at approximately 10:13
2 a.m. that same morning a City employee issued parking citation number
3 4202676203 to Welch for an expired parking meter under section 88.13(b) of
4 the Los Angeles Municipal Code (the "Code") because the parking meter had
5 expired. As with the case of Pimentel, under section 89.60 of the Code the initial
6 penalty was set at $63.00.

7       13.   On information and belief, within the following 30 days it is likely
8 that the City issued and then mailed to Welch a "Notice of Delinquent Parking
9 Violation" advising as to the due date to pay the ticket.  Said Notice also warned
10 that failure to pay the parking penalties by the due date "will result in the City of
11 Los Angeles imposing increased penalties and the withholding of your vehicle
12 registration by the Department of Motor Vehicles." The Notice further advised
13 that the "City may also subject your vehicle to immobilization (booting) or
14 impoundment (CVC 22651.7, 22651(i), or a civil judgment (CVC 40220)."

15       14.   Welch did not pay the initial $63.00 penalty by the due date. On
16 information and belief the City then likely mailed another notice to Welch on a
17 date unknown to plaintiffs, assessing, as occurred with Pimentel, an additional
18 100% penalty, pursuant section 89.60 of the Code, so that the cumulative
19 penalties increased to $126.00.

20       15.   Because Welch had not paid the $126.00, on or about May 23, 2013
21 2013 the City mailed Welch a "Delinquent Status" notice under section 89.60(b)
22 of the Code (as it did as to Pimentel), which purported to impose an additional
23 third penalty of $28 under section 89.60(b) of the Code (although that section
24 provides for an additional penalty of $26), increasing the "total fine and penalty"
25 to $154.00.  This notice assessed an additional $21.00 "collection fee" on
26 Welch, and advised that the "total due" was $175.00. The notice further advised
27 that "**The Department of Motor Vehicles has been notified to withhold**
28 **registration of your annual vehicle registration** pending resolution of the

1 citations" and that "If you have delinquent citations, your vehicle may be
2 seized." Finally, the notice advised that failure could subject Pimentel "to
3 further collection activity such as a civil judgment or an interception of your
4 state tax refunds."

5     16. On or about July 30, 2013 Welch paid the $175.00 "total due."

6     17. On information and belief the aforesaid penalties under section 89.60
7 of the Code were established by the City through its City Council within the last
8 four years as part of a schedule of civil parking penalties (the "Schedule"). At
9 that same time the penalties were established under section 89.60 for failing to
10 pay a parking meter and for an expired parking meter.

11     18. On information and belief, the parking penalties set by the Schedule
12 greatly exceed the amounts for penalties established by the City in prior years
13 for the same parking violations, reflecting an approximate 50% increase. On
14 information and belief, the City was in substantial part improperly motivated to
15 increase the amount of parking penalties on the Schedule in order to increase its
16 revenues and improve its fiscal situation in response the fallout from the 2008-
17 2009 economic crisis.

18     19. California Vehicle Code section 40203.5 subdivision (a) empowers
19 the governing body of a municipal entity to establish the schedule of parking
20 penalties for parking violations and late payment penalties. That provision
21 further directs such governing bodies to "standardize parking penalties" with
22 other parking ticket issuing agencies within the same county, to the extent
23 possible." On information and belief, the City in its Schedule charges
24 substantially higher penalties than many neighboring cities in Los Angeles
25 County have charged during the relevant time period. For example, on
26 information and belief, the City of Pasadena has charged $46.00 for an initial
27 parking meter penalty and an additional $27.90 penalty for failure to timely pay
28 the initial penalty. The $73.90 Pasadena total is $52.10 less than the $126.00

total for the City. Similarly, on information and belief, the City of Glendale has charged an initial $44.00 penalty for a parking meter violation and another $44.00 for failure to timely pay the initial penalty. The $88.00 Glendale total is $38.00 less than the $126.00 total for the City.

20. According to City-Data.com, the median per capita income in the City was $26,096 for all residents in 2009 and $13,542 for Hispanic/Latinos. According to that source the median household income in 2009 was $48,617 (and $38,868 for Hispanic/Latino households), with 8.2% earning less than $10,000, 13.1% earning between $10,000 and $20,000, 11.2% earning between $20,000 and $30,000, 9.9% earning between $30,000 and $40,000, and 8.9% earning between $40,000 and $50,000. These figures have not significantly increased since 2009. The rate of poverty in the City substantially increased since 2008 and remains at historically elevated levels.

21. At all relevant times the unemployment rate in the City has been at historically very high levels, and continues at very high rates. The cost of housing in the City is also very high relative to other parts of California and most other states.

22. As to those who either reside or work in the City, at all relevant times the minimum hourly wage has been $8.00 under California state law, a sum that is subject to substantial paycheck tax deductions and contributions required by law. The $63.00 initial penalty set by the City for parking meter violations is essentially equivalent to the wages of a worker earning the minimum wage and working an eight-hour day. The 100% penalty the City assesses for the failure to timely pay the initial penalty is likewise equivalent to the wages of a worker earning the minimum wage and working an eight-hour day. The $175.00 sum assessed against Pimentel and Welch approaches the wages of a worker earning the minimum wage and working three eight-hour days, and well exceeds those wages, net of tax deductions and contributions required by law.

1  23. A very substantial percentage of person who receive City expired
2 parking meter tickets, many of whom live paycheck to paycheck if they work at
3 all, are financially unable to pay the $63.00 initial penalty, or the second $63.00
4 penalty, let alone the $175.00 "total due" amount that accompanies a City
5 "Delinquent Status" notice.
6  24. On information and belief, the city charges variable rates to purchase
7 parking time at its parking meters depending on the meter's location or "zone."
8 But, on information and belief, even at the higher zone rates a person paying for
9 meter parking can purchase six minutes of time for $.50, 18 minutes of time for
10 $1.50, 30 minutes of time for $3.00, and an hour of time for $5.00. Under those
11 rates, a person receiving a City parking meter ticket for an expired meter who is
12 less than six minutes over the purchased time could have avoided the ticket by
13 paying an additional $.50, a person receiving a City parking meter ticket for an
14 expired meter who is just under 18 minutes over the purchased time could have
15 avoided the ticket by paying an additional $1.50, a person who receives a City
16 parking meter ticket for an expired meter who is just under 30 minutes over the
17 purchased time could have avoided the ticket by paying an additional $3.00, and
18 a person receives a City parking meter ticket for an expired meter who is just
19 under an hour over the purchased time could have avoided the ticket by paying
20 and additional $5.00. In most cases, the City's $65.00 initial penalty for an
21 expired parking meter ticket bears no reasonable relationship to the culpability
22 of persons who receive parking meter expiration tickets: the penalty is 130
23 times the additional amount a person who is less than five minutes over the
24 meter would have had to pay to avoid the ticket, over 43 times the additional
25 amount a person who is less than 18 minutes over the meter would have had to
26 pay to avoid the ticket, 21 times the additional amount a person who is less than
27 30 minutes over the meter would have had to pay to avoid the ticket, and over
28 12 times the additional amount a person who is less than 60 minutes over the

1  meter would have had to pay to avoid the ticket. The second 100% $63.00 late
2  payment effectively doubles the above multipliers.
3      25. The parking meter expiration penalties are unreasonable and
4  oppressive, and grossly disproportionate to the seriousness of the violation of the
5  City ordinance barring parking at a meter beyond the time paid to park, and even
6  as to those who receive tickets for parking at a meter without paying.
7  Imposition of these penalties is particularly onerous as to and disproportionately
8  affects low income or even average income workers in the Los Angeles area, as
9  well as those low income persons who do not work, relative to those better off
10 financially, because they are not as well positioned to pay the penalties or the
11 collection fees, and disproportionately suffer financial injury if they do pay
12 them. Such persons also disproportionately suffer the inability to register a
13 vehicle, vehicle impoundment or booting, the City reporting such persons to
14 credit reporting bureaus, and the City's pursuit of civil judgments for failure to
15 pay.

## CLASS ACTION ALLEGATIONS

17     26. This action is brought as a class action by the individual plaintiffs
18 Jesus Pimentel and David R. Welch, on behalf of themselves and on behalf of
19 the class defined in this complaint, pursuant to Rule 23(a) and 23(b)(2) and (3)
20 of the Federal Rules of Civil Procedure.
21     27. This class is defined as all persons who were assessed and/or paid the
22 penalties under the Schedule for parking at an unpaid or expired meter described
23 above. Excluded from the class are all employees, including, but not limited to,
24 judges, magistrate judges, clerks and court staff and personnel, of the United
25 States District Court, their spouses, and any minor children living in their
26 households. Plaintiffs will seek to establish subclasses under Federal Rule of
27 Civil Procedure 23(c)(5) if and when appropriate.
28

28. The proposed class meets the prerequisites of Fed. R. Civ. P. 23. Rule 23(a) provides that a class action may be brought when the class is so numerous that joinder of all parties is impracticable, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the class. This action is properly maintainable as a class action for the reasons set forth below.

29. The exact numbers of members of the class identified in the preceding paragraphs, for whose benefit this action is brought, are not presently known but are so numerous that joinder of individual members in this action is impracticable. The exact number of class members can only be ascertained through discovery, because such information is in the exclusive control of City. However, on information and belief, and based on the nature of the activities alleged herein, plaintiffs reasonably believe that the proposed class would contain thousands if not tens of thousands of members. The names and addresses of class members are readily obtainable from the City.

30. There is a well-defined community of interest in the questions of law and fact with regard to the proposed classes. Questions of law and fact arising out of the City's conduct are common to all members of the class, and such common issues of law and fact predominate over any questions affecting only individual members of the class. Common issues of law and fact which are common to all members of all classes include: (a) Whether the parking penalties assessed by the City constitute an "excessive fines" under the United States and California constitutions; (b) whether the parking penalties assessed by the City violate rights to due process under the United States and California constitutions; (c) appropriate equitable relief; (d) whether the City should refund the unlawful portion of the payments it collected as damages or restitution; payments it collected; (e) whether unpaid assessed penalties should be forgiven;

and (f) whether the City should be enjoined from further collection of said penalties and collection fees.

31. The class representative plaintiffs are asserting claims that are typical of the claims of the members of the class they seek to represent, in that they all have been assessed and/or have paid the unconstitutional parking penalties. There is no conflict between any class representative and other members of the class with respect to this action, and the class representative plaintiffs are not aware of any individualized defenses that may be raised by the City that impair each representative's ability to act on behalf of the class. Plaintiffs as representative parties, will fairly and adequately protect the interests of the class by vigorously pursuing this suit through attorneys who are skilled and experienced in handling matters of this type. Plaintiffs understand and appreciate their duties to the class and are committed to vigorously protecting the rights of absent class members.

32. By consistently assessing and insisting on payment of the unlawful penalties the City has acted on grounds generally applicable to the class, thereby making declaratory and injunctive relief appropriate with respect to the class as a whole. See Fed. R. Civ. P. 23(b)(2).

33. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3). The questions of law or fact common to each member of the class predominate over any questions affecting only individual members. A class action is superior to other available methods for a fair and efficient adjudication of the claims asserted herein given that, among other things: (i) significant economies of time, effort, and expense will inure to the benefit of the Court and the parties in litigating the common issues on a class-wide instead of a repetitive individual basis; (ii) the size of most class members' individual damage claims is too small to make individual litigation an economically viable alternative, such that few class members have any interest in individually pursuing

prosecution of a separate action; (iii) without the representation provided by plaintiffs herein, few, if any, class members will receive legal representation or redress for their injuries; (iv) class treatment is required for optimal deterrence; (v) despite the relatively small size of many individual class members' claims, their aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost effective basis, especially when compared with repetitive individual litigation; (vi) no unusual difficulties are likely to be encountered in the management of this class action; (vii) absent a class action, the City will likely retain and will continue to collect millions of dollars, and its illegal and unfair conduct would go unremedied and uncorrected; and (viii) absent a class action, the class members will continue to suffer losses, and the City will be allowed to continue to assess and collect illegal penalties.

34. Plaintiffs contemplate such notice to the class as may be appropriate under Fed. R. Civ. P. 23(c)(2).

## FIRST CLAIM FOR RELIEF UNDER 42 U.S.C. § 1983
## FOR VIOLATION OF THE EIGHTH AND FOURTEENTH
## AMENDMENTS TO THE UNITED STATES CONSTITUTION
(by individual plaintiffs and plaintiff class)

35. Plaintiffs repeat and reallege and incorporate by reference each and every allegation in paragraphs 1 through 34, inclusive, of this complaint as if fully set forth herein.

36. In light of the minor nature of the violations and their financial effect on members of the plaintiff class, the aforementioned three parking penalties are punitive in nature, and are grossly excessive and disproportionate, particularly when accumulated and/or added to the $21.00 "collection fee," and given the City's threats of an inability to re-register a vehicle, vehicle booting and impoundment, and referral to a credit reporting bureau. The dollar amount

and enforcement of these penalties constitute a violation of the prohibition in the Eighth Amendment to the United States Constitution of excessive fines, as incorporated in the Fourteenth Amendment.

37. As a direct result of said constitutional violations on the part of the City plaintiffs and members of the plaintiff class, and each of them, have been damaged, and are entitled to damages, including restitution of the amounts of any penalties and collection fees paid to the City.

38. Plaintiffs and the members of the plaintiff class will suffer immediate and irreparable injury for which there is no adequate remedy at law if the aforementioned penalties and policies to enforce them are allowed to continue. Plaintiffs and the class members seek injunctive relief, both preliminary and permanent, to stop the City unlawful conduct described above.

39. There is a real and actual controversy between the parties as to whether the parking meter penalties described above violate the Eighth and Fourteenth Amendment's prohibition of excessive fines. Plaintiffs maintain that the penalties violate the excessive fines clause of the Eighth and Fourteenth Amendments, which the City disputes. This imposition of, and continued effort to collect, these penalties constitutes a legal injury which is concrete and particularized. It is likely that these injuries will be fairly addressed by a favorable Court ruling. Plaintiffs and the members of the plaintiff class therefore seek declaratory relief in order to declare the penalty scheme unconstitutional, and that they did not and do not owe and need not pay said penalties and attendant collection costs.

## SECOND CLAIM FOR RELIEF
## FOR VIOLATION OF THE EXCESSIVE FINES PROVISION OF
## ARTICLE 1, SECTION 17 OF THE CALIFORNIA CONSTITUTION

(by individual plaintiffs and plaintiff class)

40. Plaintiffs repeat and reallege and incorporate by reference each and every allegation in paragraphs 1 through 39, inclusive, of this complaint as if fully set forth herein.

41. This claim for relief is brought under the California Constitution and under section 52.1 (b) of the California Civil Code.

42. The dollar amount and enforcement of these penalties constitute a violation of the prohibition in the Article 1, Section 17 of the California Constitution against the imposition of excessive fines.

43. As a direct result of said constitutional violations on the part of the City plaintiffs and members of the plaintiff class, and each of them, have been damaged, and are entitled to damages, including restitution of the amounts of any penalties and collection fees paid to the City.

44. Plaintiffs and the members of the plaintiff class will suffer immediate and irreparable injury for which there is no adequate remedy at law if the aforementioned penalties and policies to enforce them are allowed to continue. Plaintiffs and the class members seek injunctive relief, both preliminary and permanent, to stop the City unlawful conduct described above.

45. There is a real and actual controversy between the parties as to whether the parking meter penalties described above violate the prohibition in Article 1, Section 17 of the California Constitution against the imposition of excessive fines. This imposition of, and continued effort to collect, these penalties constitutes a legal injury which is concrete and particularized. It is likely that these injuries will be fairly addressed by a favorable Court ruling. Plaintiffs and the members of the plaintiff class therefore seek declaratory relief

in order to declare the penalty scheme unconstitutional, and that they did not and do not owe and need not pay the penalties and attendant collection fees.

### THIRD CLAIM FOR RELIEF UNDER 42 U.S.C. § 1983 FOR VIOLATION OF THE RIGHT UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION TO DUE PROCESS

(by individual plaintiffs and plaintiff class)

46. Plaintiffs repeat and reallege and incorporate by reference each and every allegation in paragraphs 1 through 39, inclusive, of this complaint as if fully set forth herein.

47. The Fourteenth Amendment to the United States Constitution, section 1, prohibits any State from depriving any person of life, liberty, or property, without due process of law. The City's excessive penalties scheme and their enforcement, as above alleged, have deprived the plaintiffs and the class members of property in violation of due process.

48. As a direct result of such violation of due process plaintiffs and the class members have been damaged. The plaintiffs and the class members are entitled to the recovery of damages, and appropriate injunctive and declaratory relief, as alleged above.

### FOURTH CLAIM FOR RELIEF FOR VIOLATION OF THE DUE PROCESS CLAUSE OF ARTICLE 1, SECTION 7(a) OF THE CALIFORNIA CONSTITUTION

(by individual plaintiffs and plaintiff class)

49. Plaintiffs repeat and reallege and incorporate by reference each and every allegation in paragraphs 1 through 45, inclusive, of this complaint as if fully set forth herein.

50. Article 1, Section 7(a) of the California Constitution provides that a person may not be deprived of life, liberty, or property without due process of law. The City's excessive penalties scheme and their enforcement, as above

alleged, have deprived the plaintiffs and the class members of property in violation of due process.

51. As a direct result of such violation of due process plaintiffs and the class members have been damaged. The plaintiffs and the class members are entitled to the recovery of damages, and appropriate injunctive and declaratory relief.

## PRAYER

WHEREFORE, plaintiffs pray for judgment against defendant, as follows:

1. That the Court determine that the claims for relief herein may be maintained as a class action;
2. For injunctive relief prohibiting defendant's unlawful penalty and penalty enforcement practices;
3. For declaratory relief;
4. For damages and/or restitution, according to proof;
5. For pre-judgment interest;
6. For costs of the suit incurred herein, including attorney fees and other expenses pursuant to 42 U.S.C. § 1988 and California Code of Civil Procedure § 1021.5 and/or California Civil Code § 52.1(h), as the case may be; and
7. For such other and further relief as the Court may deem just and proper.

Dated: February 21, 2014         NORRIS & GALANTER LLP

By _____
Donald G. Norris
Attorneys for plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs request a trial by jury on all claims.

Dated: February 21, 2014

NORRIS & GALANTER LLP

By _____
Donald G. Norris
Attorneys for plaintiffs