# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS PIMENTEL, et al., | Case No. CV 14-1371 FMO (Ex) |
| Plaintiffs, | |
| v. | **ORDER Re: PENDING MOTION** |
| CITY OF LOS ANGELES, | |
| Defendant. | |

Having reviewed and considered all the briefing filed with respect to the City of Los Angeles's ("City" or "defendant") Motion to Dismiss the First Amended Complaint for Failure to State a Claim Upon Which Relief May Be Granted ("Motion," Dkt. No. 32), the court concludes that oral argument is not necessary and concludes as follows. See Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001).

## INTRODUCTION

On February 24, 2014, Jesus Pimentel ("Pimentel") and David R. Welch ("Welch") filed a Complaint against defendant on behalf of themselves and all persons similarly situated. (See Complaint, Dkt. No. 1). The Complaint asserted causes of action for violations of the: (1) Excessive Fines Clause of the Eighth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983; (2) excessive fines provision of Article I, Section 17 of the California Constitution; (3) Due Process Clause of the Fourteenth Amendment of the United States Constitution pursuant 42 U.S.C. § 1983; and (4) due process clause of Article I, Section 7(a) of

the California Constitution. (See id. at ¶¶ 35-51). The Complaint challenges the City's practice of "charging those who receive tickets for expired parking meters disproportionally excessive penalties." (Id. at ¶ 1).

Pimentel and Welch subsequently filed a First Amended Complaint ("FAC," Dkt. No. 29), asserting the same causes of action. (See FAC at ¶¶ 56-72). The FAC also named as additional plaintiffs Jeffrey O'Connell ("O'Connell"), Edward Lee ("Lee"), Wendy Cooper ("Cooper"), Jaclyn Baird ("Baird"), Anthony Rodriguez ("Rodriguez"), Rafael Buelna ("Buelna"), and Elen Karapetyan ("Karapetyan") (collectively, "additional plaintiffs," together with Pimentel and Welch, "plaintiffs"). The class action allegations were brought on behalf of a class defined as "all persons who were assessed and/or paid the penalties under the Schedule for parking at an unpaid or expired meter[.]" (Id. at ¶ 48).

**FACTUAL ALLEGATIONS**

I.   PLAINTIFFS.

On May 29, 2013, Pimentel received a parking citation for an expired parking meter under § 88.13(b) of the Los Angeles Municipal Code (the "Code"). (See FAC at ¶ 7). Under § 89.60 of the Code, the initial penalty for such a violation is $63.00. (See id.). On or about June 21, 2013, the City issued and mailed a Notice of Delinquent Parking Violation ("Notice") to Pimentel, advising him that the due date to pay the initial penalty was July 5, 2013. (See id. at ¶ 8). The Notice also advised Pimentel that failure to pay the penalty by the due date would "result in the City of Los Angeles imposing increased penalties and the withholding of [his] vehicle registration by the Department of Motor Vehicles." (Id.). Finally, the Notice warned Pimentel that the City "may also subject [his] vehicle to immobilization (booting) or impoundment, . . . or a civil judgment[.]" (Id.).

Pimentel was unable to pay the initial penalty by the July 5, 2013 due date "because he did not then have the funds to pay without jeopardizing his ability to pay more critical financial obligations." (FAC at ¶ 9). The City "likely mailed another notice to Pimentel . . . assessing an additional 100% penalty, pursuant to [§] 89.60 of the Code," which increased the penalty to $126.00. (See id.). Pimentel was unable to pay the increased penalty due to financial hardship. (See id.). As a result of his inability to pay the increased penalty, the City, on or about August 23,

2013, mailed Pimentel a "Delinquent Status" notice ("Delinquent Status Notice"), which imposed an additional penalty of $28 – despite the Code's provision of a $26 additional penalty – thereby increasing the "total fine and penalty" to $154.00. (See id. at ¶ 10). The Delinquent Status Notice also imposed a $21.00 "collection fee" and set forth a "total due" amount of $175.00. (See id.). The Delinquent Status Notice advised Pimentel that "[t]he Department of Motor Vehicles has been notified to withhold registration of [his] annual vehicle registration pending resolution of the citations[,]" that "[i]f [he] ha[s] delinquent citations, [his] vehicle may be seized[,]" and that failure to pay could subject Pimentel "to further collection activity such as a civil judgment or an interception of [his] state tax refunds." (Id.) (emphasis omitted). Pimentel did not pay the "total due" amount at that time due to financial hardship. (See id.). He eventually paid the $175.00 amount in order to register his car. (See id. at ¶ 11).

On February 25, 2013, Welch received a citation for parking at an expired parking meter and was assessed an initial penalty of $63.00. (See FAC at ¶ 12). "[W]ithin the following 30 days it is likely that the City issued and then mailed to Welch" a Notice identical to the one sent to Pimentel. (See id. at ¶ 13) (Notice advising Welch of the due date and risk of increased penalties, withholding of registration, booting, impoundment, and civil judgment). Welch did not pay the initial penalty by the due date. (See id. at ¶ 14). As with Pimentel, the City "likely mailed another notice" advising Welch that it was assessing an additional 100% penalty, increasing the penalty to $126.00. (See id.). Welch did not pay the increased penalty by the due date. (See id. at ¶ 15). On or about May 23, 2012, as a result of Welch's nonpayment, the City mailed Welch a Delinquent Status Notice imposing an additional penalty of $28 – instead of $26 – and an additional $21 collection fee, which increased the total amount due to $175.00. (See id.). The Delinquent Status Notice also provided the above-described warnings regarding vehicle registration, vehicle seizure, and further collection activity. (See id.). On or about July 30, 2013, Welch paid the $175.00. (See id. at ¶ 16).

The FAC describes similar factual scenarios for the other plaintiffs. O'Connell received several parking meter citations in the City of Los Angeles during the previous two years, which caused him to receive the same notices and incur the same fines and penalties as Pimentel and

Welch. (See FAC at ¶ 18-19). O'Connell was unable to pay the citations due to financial hardship (see id. at ¶ 19), although he "eventually entered into an installment payment plan with the City" to pay his outstanding penalties (see id. at ¶ 20). However, he was ultimately unable to make the scheduled payments, and O'Connell's vehicle was towed and impounded. (See id.). O'Connell "has not had the financial wherewithal to pay to retrieve his vehicle[,]" and he "has suffered lost income and financial hardship as a result[.]" (Id.).

Lee received multiple parking meter tickets in Los Angeles in 2013. (See FAC at ¶ 22). Similar to O'Connell, Lee "made payments on the parking meter tickets, but he could not afford to pay them on time[,]" nor could he "afford the late penalties and fees imposed by the City." (Id.).

Cooper received a parking citation for an expired parking meter in 2013. (See FAC at ¶ 23). She "missed the due date for paying the ticket" due to the illness and death of her father around the same time. (See id.). On January 2, 2014, Cooper contacted the City Parking Violations Bureau and requested that the late penalties and fees be waived. (See id. at ¶ 24). She was advised to send a letter explaining her situation and to include payment for the original penalty amount of $63, along with proof of her personal difficulties. (See id.). Cooper sent the letter and payment, but has received no response to her letter. (See id.).

Baird received seven citations for expired parking meters. (See FAC at ¶¶ 25-28). She did not pay the penalties for the first three citations due to financial difficulties and, as a result, was unable to register her car. (See id. at ¶ 25). On January 17, 2014, Baird received the fourth citation for parking at an expired meter. (See id. at ¶ 26). She was unable to pay that citation on time, was assessed an additional fee, and ultimately paid a penalty of $151. (See id.). On February 2, 2014, Baird received her fifth parking citation. (See id. at ¶ 27). Again, she was unable to pay the initial penalty on time and was assessed an additional $63, ultimately paying a penalty of $126. (See id.). On May 14 and 23, 2014, Baird received her sixth and seventh parking citations, respectively, which she was unable to pay due to financial hardship. (See id. at ¶ 28). Baird's car "was impounded due in substantial part to not paying her parking meter tickets, and the penalties and fees assessed on them." (Id. at ¶ 29). She is unable to pay the approximately $1,300 required to release her vehicle. (See id.).

On January 22, 2014, Rodriguez received a citation for an expired parking meter despite having sufficient funds in the meter to cover the time period he parked. (See FAC at ¶ 30). Within 15 days of issuance of the ticket, Rodriguez went to the Van Nuys office of the City's Parking Violations Bureau to contest the ticket. (See id. at ¶ 31). Rodriguez filled out and submitted an "Initial Review Request." (See id.). He also requested a copy of the parking meter service record and the citing officer's performance record. (See id.). Even though he paid with coins, Rodriguez received a letter from the Parking Violations Bureau requesting that he provide his credit card statement showing the payments made to the City for parking at the meter on the day in question. (See id. at ¶ 32). Eventually, "the City responded to Rodriguez's review request with a denial that the meter had been operating improperly." (Id. at ¶ 33). Ultimately, the City waived late penalties on the ticket but still required Rodriguez to pay the initial $63 penalty and a $2 processing fee, "which he paid on May 2, 2014, and which imposed a financial hardship on him." (See id.).

On January 17, 2014, Buelna received a citation for parking at an expired meter. (See FAC at ¶ 34). Buelna alleges that he "had clearly displayed his disabled placard, which was hanging from the rear view mirror, so he should not have received the ticket." (See id.). Although Buelna "planned to pay the initial $63 fine . . . by saving $20 from three Social Security checks[,]" the penalties associated with the citation increased to $175 before he was able to pay. (See id. at ¶ 35). "Such a sum imposes an egregious hardship" upon Buelna. (Id.).

Karapetyan received six parking meter citations, which she could not afford to pay on time. (See FAC at ¶ 36). The City has assessed $175 in penalties and fees as to each of these citations, and while she has paid two of them, she "is presently unable to pay the remainder of them." (See id.).

II.     PARKING PENALTIES IN LOS ANGELES.

Section 89.60 of the Code, which sets forth a schedule of civil penalties for failing to pay a parking meter (the "Schedule"), was established by defendant through its City Council within the last four years as part of a schedule of civil parking penalties (the "Schedule"). (See FAC at ¶ 37). Plaintiffs allege that the parking penalties set by the Schedule exceed the penalties established by the City in prior years for the same parking violations by approximately 50%. (See id. at ¶ 38).

They further allege that the large increase in penalties is due, in substantial part, to the City's efforts to "increase its revenues and improve its fiscal situation in response to the fallout from the 2008-2009 economic crisis." (Id.). Although California Vehicle Code § 40203.5(a) gives cities the power to establish parking penalties, it "directs [them] to 'standardize parking penalties' with other parking ticket issuing agencies within the same county, to the extent possible." (Id. at ¶ 39). Plaintiffs allege that the City charges "substantially higher penalties than many neighboring cities in Los Angeles County[,]" such as Pasadena and Glendale. (See id.).

According to plaintiffs, "the City charges variable rates to purchase time at its parking meters depending on the meter's location[,] or 'zone.'" (FAC at ¶ 45). In some of the higher rate zones, "a person paying for meter parking can purchase six minutes of time for $.50, 18 minutes of time for $1.50, 30 minutes of time for $3.00, and an hour of time for $5.00." (Id.). Thus, plaintiff alleges, considering the amount of money it would take to buy additional time, "the City's $63.00 initial penalty . . . is 130 times the additional amount a person who is less than [six] minutes over the meter would have had to pay to avoid the ticket, over 43 times the additional amount a person who is less than 18 minutes over the meter would have had to pay to avoid the ticket, 21 times the additional amount a person who is less than 30 minutes over the meter would have had to pay to avoid the ticket, and over 12 times the additional amount a person who is less than 60 minutes over the meter would have had to pay to avoid the ticket." (Id.). Further, "[i]n lower zone areas where it is cheaper to park[,] these multipliers necessarily are proportionally higher." (Id.). Moreover, "the second 100% $63 late payment penalty effectively doubles the above multipliers." (Id.).

For these reasons, plaintiff alleges that "[t]he parking meter expiration penalties are unreasonable and oppressive, and grossly disproportionate to the seriousness of the violation of the City ordinance barring parking at a meter beyond the time paid to park, as well as to those who receive tickets for parking at a meter without paying at all." (FAC at ¶ 46). Making matters worse, "[i]mposition of these penalties is particularly onerous as to and disproportionately affects low income or even average income workers in the Los Angeles area . . . because they are not as well

positioned to pay the penalties or the collection fees, and disproportionately suffer injury if they do not pay them." (Id.).

## LEGAL STANDARD

A motion to dismiss for failure to state a claim should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007); see Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009); Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; Cook, 637 F.3d at 1004; Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010). Although the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Twombly, 550 U.S. at 555, 127 S.Ct. at 1965; see Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; see also Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004), cert. denied, 544 U.S. 974 (2005) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations and internal quotation marks omitted). "Specific facts are not necessary; the [complaint] need only give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) (per curiam) (citations and internal quotation marks omitted); see Twombly, 550 U.S. at 555, 127 S.Ct. at 1964.

In considering whether to dismiss a complaint, the court must accept the allegations of the complaint as true, Erickson, 551 U.S. at 93-94, 127 S.Ct. at 2200; Albright v. Oliver, 510 U.S. 266, 268, 114 S.Ct. 807, 810 (1994), construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421-22, 89 S.Ct. 1843, 1849 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). Dismissal for failure to state a claim can be warranted based on either a lack of a cognizable legal theory or the

absence of factual support for a cognizable legal theory.  See Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).  A complaint may be dismissed also for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim.  Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

## DISCUSSION

Defendant argues that "the [FAC] fails to plead facts sufficient to suggest a plausible scenario for claims under the Excessive Fines and Due Process clauses of the United States and California Constitutions, and there is no reasonable likelihood that the [FAC] can be amended to state a claim upon which relief may be granted." (See Motion at 5).  Although defendant combines the excessive fines and due process standards under both the federal and California constitutions in one argument, the court will address excessive fines and due process separately, as there is a greater degree of difference between the standards than defendant suggests.[1]  Then, the court addresses defendant's argument with respect to damages claims under the California Constitution (see Motion at 14-15) and California's claims filing requirements  (see id. at 15-16).

I.    EXCESSIVE FINES CLAUSE.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  The Excessive Fines Clause "limits the government's power to extract payments, whether in cash or

---

[1] Throughout its briefing, defendant conflates the gross proportionality test for claims under the Excessive Fines Clause, Bajakajian, 524 U.S. at 336, 118 S.Ct. at 2037, and the "shocks the conscience" test applicable to substantive due process violations under the Fourteenth Amendment. (See, e.g., Motion at 7) ("the Excessive Fines Clause is not violated unless the court can determine, as a matter of law, that a fine shocks the conscience."); see also United States v. Salerno, 481 U.S. 739, 746, 107 S.Ct. 2095, 2101 (1987) ("So-called substantive due process prevents the government from engaging in conduct that shocks the conscience, . . . or interferes with rights implicit in the concept of ordered liberty") (internal quotation marks omitted) (alteration in the original); Corales v. Bennett, 567 F.3d 554, 568 (9th Cir. 2009) (substantive due process "forbids the government from depriving a person of life, liberty, or property in such a way that shocks the conscience or interferes with the rights implicit in the concept of ordered liberty.") (internal citations and quotation marks omitted)

in kind, as punishment for some offense."[2] Austin v. United States, 509 U.S. 602, 609-10, 113 S.Ct. 2801, 2805 (1993) (emphasis and internal quotation marks omitted); see United States v. Bajakajian, 524 U.S. 321, 328, 118 S. Ct. 2028, 2033 (1998), superseded on other grounds by statute, as recognized in U.S. v. Del Toro-Barboza, 673 F.3d 1136, 1154 (9th Cir. 2012). Similarly, Article 1, Section 17 of the California Constitution states, "[c]ruel or unusual punishment may not be inflicted or excessive fines imposed." Cal. Const. art. I, § 17. "This section is a state equivalent to the Eighth Amendment." Brownlee v. Burleson, 2006 WL 2354888, *7 (E.D. Cal. 2006) (recommending summary judgment on the California claim "[b]ecause this court finds that all defendants are entitled to summary judgment on [the] Eighth Amendment Claim"); see also In re Alva, 33 Cal.4th 254, 291 (2004) ("We see no basis to find a different meaning of 'punishment' for state purposes than would apply under the Eighth Amendment."); People ex rel. Lockyer v. R.J. Reynolds Tobacco Co., 37 Cal.4th 707, 727-30 (2005) (considering federal and state case law together in determining what factors were relevant to the constitutional "evaluation of the fine assessed against the defendant."). Therefore, given the similarity in the federal and state constitutional provisions and the case law interpreting them, the court considers both provisions together.

The Supreme Court has articulated "the standard of gross disproportionality" in evaluating a claim arising under the Excessive Fines Clause. See Bajakajian, 524 U.S. at 336, 118 S.Ct. at 2037. "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality [and t]he amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." Id. at 334, 118 S.Ct. at 2036. When called upon to determine whether a fine violates the Excessive Fines Clause, "the district courts . . . must compare the amount of the forfeiture to the gravity of the [] offense. If the amount of the forfeiture

---

[2] While the Supreme Court has stated that nonpunitive forfeitures "occupy a place outside the domain of the Excessive Fines Clause[,]" Bajakajian, 524 U.S. at 331, 118 S. Ct. at 2035, the City does not assert that the parking fines in this case are nonpunitive. (See, generally, Motion; see also id. at 14 (recognizing that some portion of the $63.00 fine is "punitive in its purpose or effect")). Because the fines are "at least in part, punitive[,]" they are "subject to the Excessive Fines Clause." See United States v. Mackby, 339 F.3d 1013, 1015 (9th Cir. 2003), cert. denied, 541 U.S. 936 (2004).

is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." Id. at 336-37, 118 S.Ct. at 2037-38. Nevertheless, courts must bear in mind that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature[,]" id. at 336, 118 S.Ct. at 2037, and that a court's review of the propriety of a punishment will be inherently imprecise. See id. "Both of these principles counsel against requiring strict proportionality between the amount of a punitive forfeiture and the gravity of a criminal offense," id., and are thus taken into account by the Supreme Court's adoption of the standard of gross proportionality.

In evaluating whether a fine is grossly disproportionate, courts "typically consider[] four factors in weighing the gravity of the defendant's offense: (1) the nature and extent of the crime, (2) whether the violation was related to other illegal activities, (3) the other penalties that may be imposed for the violation, and (4) the extent of the harm caused." United States v. $132,245.00 in U.S. Currency, 764 F.3d 1055, 1058 (9th Cir. 2014) (internal citations and quotation marks omitted).

Defendant asserts that "the Excessive Fines Clause is not violated unless the court can determine, as a matter of law, that a fine shocks the conscience[,]" and that "expired meter fines cannot reasonably be described as egregious to the point of shocking the conscience." (Motion at 7). "Where the connection between the forfeiture and the alleged reporting violation in Bajakajian was found to be non-existent given that no actual harm had been caused, the plaintiffs' parking violations do cause actual harm that bear an articulable correlation to the amount of the fine." (Id. at 7-8). The City goes on the argue that parking at expired meters deprives the public fisc of revenue and diminishes the City's supply of parking, and therefore, an articulable correlation exists between the infractions and the fines. (See id.). That may be so, but the City's argument highlights the reason that dismissal of the Eighth Amendment claim at this stage is unwarranted. What portion of defendant's $63 initial penalty or $126 or $175 increased penalty is punitive and what portion bears some relationship to the gravity of the offense is a fact-based question. Likewise, deprivation of the public fisc and of the necessary supply of short term parking are facts that would tend to prove or disprove the proportionality of the injury suffered by the government to the penalty imposed on plaintiffs. See, e.g., Wright v. Riveland, 219 F.3d 905, 918-19 (9th Cir.

2000) (reversing district court's dismissal of violation of the Excessive Fines Clause claims and remanding for a factual determination of excessiveness). "[U]nless [the] court converts a Rule 12(b)(6) motion into a motion for summary judgment, [the] court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials)." Waters v. Howard Sommers Towing, Inc., 2011 WL 2601835, *2 (C.D. Cal. 2011) (emphasis added).

Furthermore, while defendant may be correct that ability to pay is not a factor that plaintiffs must prove to prevail on their excessive fines claim (see Motion at 8-10), it is relevant to the proportionality analysis. See, e.g., Bajakajian, 524 U.S. at 335-36, 118 S.Ct. at 2037 (discussing precedent requiring that fines should be "proportioned to the offense and that they should not deprive a wrongdoer of his livelihood"); United States v. Levesque, 546 F.3d 78, 83-84 (1st Cir. 2008) ("The Supreme Court has made it clear that the notion that a forfeiture should not be so great as to deprive a wrongdoer of his or her livelihood is deeply rooted in the history of the Eighth Amendment."); cf. Bajakajian, 524 U.S. at 340, n. 15, 118 S.Ct. at 2039, n. 15 (not addressing ability to pay because "Respondent does not argue that his wealth or income are relevant . . . or that full forfeiture would deprive him of his livelihood[,]" and because "the District Court made no factual findings in this respect."). This is especially true under California law, as the California Supreme Court has stated that it considers "the defendant's ability to pay" a factor in analyzing proportionality under Bajakajian. See R.J. Reynolds, 37 Cal.4th at 728 (citing with approval City and Cnty. of San Francisco v. Sainez, 77 Cal.App.4th 1302, 1322 (2000) (review denied May 10, 2000), which found that "we agree, that in the case of fines . . . the defendant's ability to pay is a factor under the Excessive Fines Clause.") (internal quotation marks and citation omitted). That the court may consider plaintiffs' ability to pay further strengthens the court's conclusion that dismissal at this stage would be inappropriate. The effect of the parking fines and penalties on the livelihoods of plaintiffs and their ability to pay present complex factual considerations that cannot be determined on this Motion.

In short, the court finds that plaintiffs have articulated "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (internal quotation marks and citation omitted). Accordingly, defendant's motion to dismiss

the plaintiffs' first and second causes of action for alleged violations of the excessive fines provisions of the federal and California constitutions is denied.

II.     DUE PROCESS.

Plaintiffs' third and fourth causes of action arise under the Fourteenth Amendment of the United States Constitution and Article 1, Section 7 of the California Constitution, respectively. Both provisions provide that a person may not be deprived of property without due process of law. See U.S. Const., amend. XIV & Cal. Const. art. 1, § 7. Like the provisions with respect to excessive fines, both due process provisions are interpreted similarly, see, e.g., R.J. Reynolds, 37 Cal.App.4th at 727-30, and the court considers them together.

The United States Supreme Court has held that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const., amend. XIV, § 1. The Supreme Court has further held the Due Process Clause "to cover a substantive sphere as well," Cnty. of Sacramento v. Lewis, 523 U.S. 833, 840, 118 S.Ct. 1708, 1713 (1998), "barring certain government actions regardless of the fairness of the procedures used to implement them." Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 665 (1986); see also Zinermon v. Burch, 494 U.S. 113, 125, 110 S.Ct. 975, 983 (1990) (noting that substantive due process violations are actionable under § 1983). Substantive due process thus embodies society's desire to "prevent government from abusing [its] power, or employing it as an instrument of oppression." Collins v. Harker Heights, 503 U.S. 115, 126, 112 S.Ct. 1061, 1069 (1992) (internal quotation marks omitted).

The standard that has emerged from this doctrine is that legislative action that deprives an individual of life, liberty, or property (and that does not implicate a fundamental right) must be reasonably related to a legitimate governmental interest. See Lewis, 523 U.S. at 846, 118 S.Ct. at 1716. By the same token, government "conduct that shocks the conscience and violates the decencies of civilized conduct" violates due process. Id. (further explaining that the substantive due process guarantee "protects against government power arbitrarily and oppressively exercised"). Importantly, the Supreme Court has emphasized that only the most egregious official conduct can be said to be "arbitrary in the constitutional sense[.]" See Collins v. City of Harker Heights, Tex., 503 U.S. 115, 129, 112 S.Ct. 1061, 1071 (1992). Conscious-shocking conduct

does "more than offend some fastidious squeamishness or private sentimentalism about combatting crime too energetically[;]" it is conduct "bound to offend even hardened sensibilities." See Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 209-10 (1952)

Plaintiffs assert that defendant's excessive penalties and enforcement schemes deprive them of their property interests[3] in violation of their substantive due process rights under the Fourteenth Amendment.[4]  (See FAC at ¶ 68).  Given the very high standard described in the preceding paragraphs, a number of courts facing facts similar to those alleged by plaintiffs in this case have found that such allegations are insufficient to state a claim for denial of substantive due process.  See, e.g., Kelly v. Rice, 375 F.Supp.2d 203, 209 (S.D.N.Y. 2005) ("Nothing about the issuance of a parking ticket implicates the rarely-used doctrine of substantive due process."); Yagman v. Garcetti, 2014 WL 3687279, *3 (C.D. Cal. 2014) (citing Daniels, 474 U.S. at 332, 106 S.Ct. at 663 (1986)) ("To detect a cognizable constitutional claim from the mere temporary deprivation of $73 'would trivialize the centuries-old principle of due process of law.'").  Plaintiffs have failed to allege that the City's ticketing conduct is so arbitrary that it shocks the conscience. See, e.g., Peruta v. City of Hartford, 2012 WL 3656366, *10 (D. Conn. 2012) ("It cannot be said that the City's conduct, in giving Plaintiff a parking ticket for failing to pay, even assuming that the plaintiff did not have actual or constructive notice that he had to pay for parking, was 'arbitrary,' 'malicious,' or 'brutal' in the constitutional sense . . . Nor has Plaintiff alleged that there was any improper motive or a purposeful harm.").  Accordingly, the court grants defendant's motion to dismiss plaintiffs' federal and state substantive due process claims with prejudice.

---

[3] Plaintiffs do not specifically explain what property interest they have been denied. (See, generally, FAC at ¶ 67-69).  The court assumes they refer to the amounts assessed by parking tickets and late fees and/or the additional consequences of towing and impoundment.

[4] Plaintiffs do not appear to be asserting a procedural due process claim (see, generally, FAC), nor does defendant raise this issue in its Motion, (see, generally, Motion), so the court does not address whether plaintiffs have stated facts sufficient to support such a claim.

III. DAMAGES CLAIMS UNDER THE CALIFORNIA CONSTITUTION.

The City argues that although plaintiffs allege causes of action under the excessive fines and due process clauses of the California Constitution and request damages on both claims, (see FAC at ¶¶ 64 & 72), the California Supreme Court has "held that there is no implied cause of action for damages for alleged violations of provisions of the state constitution." (See Motion at 14 (citing Katzberg v. Regents of Univ. of Cal., 29 Cal.4th 300 (2002)). Plaintiffs counter that their claims for relief survive because they also seek declaratory and injunctive relief and, in any event, Katzberg was limited to the issue of whether money damages are available for claims of violation of a due process liberty interest. (See Opposition to Motion to Dismiss First Amended Complaint for Failure to State a Claim upon Which Relief may be Granted ("Opp'n, Dkt. No. 35) at 13).

As an initial matter, plaintiffs are correct that their cause of action[5] under the California Constitution survives because it seeks declaratory and injunctive relief. (See FAC at ¶¶ 65-66). One specific component of the relief it requests, however, is "damages, including restitution of the amounts of any penalties and collection fees paid to the city." (See id. at ¶ 64). The analysis below addresses whether that component is available to plaintiffs.

As plaintiffs suggest, Katzberg was limited to the narrow issue of whether money damages are available for a violation of the due process liberty interest and "did not address the issue of whether money damages are permissible remedies for violation of the due process property interest." San Joaquin Deputy Sheriffs' Ass'n v. Cnty. of San Joaquin, 898 F.Supp.2d 1177, 1189-90 (E.D. Cal. 2012) (emphasis in original) (citing Walls v. Central Contra Costa Transit Auth., 2012 WL 581362, *3 (N.D. Cal. 2012). Katzberg makes clear, however, that constitutional tort damages remedies are the exception, not the rule. See 29 Cal.4th at 311 ("only two decisions . . . have recognized an action for damages to remedy a violation of the state Constitution. All subsequent decisions addressing the issue have declined to find such an action for damages.").

---

[5] In this section, the court considers only plaintiffs' cause of action seeking relief for violation of California's excessive fines provision, see supra at § I, as its other California cause of action is dismissed. See supra at § II.

1       While the Katzberg court's discussion may have been limited to the issue of due process liberty interests, the California Supreme Court has laid out a more general method for evaluating whether damages claims are available under other provisions of the California Constitution. First, a court "begin[s] [its] inquiry by asking whether, when the constitutional provision at issue was adopted, the enactors intended that it include a damages remedy for its violation." Katzberg, 29 Cal.4th at 317 (emphasis in original). Second, when a court does not "discover[] any basis for concluding that a damages remedy was contemplated . . . [and] also [does] not discover[] any basis for concluding that a damages remedy was intended to be foreclosed[,]" courts "shall proceed to consider whether a constitutional tort action for damages to remedy the asserted constitutional violation should be recognized." See id. at 324. That involves consideration of a number of factors, including "the adequacy of existing remedies" (id. at 325), "the extent to which a constitutional tort action would change established tort law" (id. at 327), and "the nature of the provision and the significance of the purpose that it seeks to effectuate" (id. at 328). Even then, the inquiry does not end, because if a court finds that these factors favor "recognition of a constitutional tort," a court should "also consider the existence of any special factors counseling hesitation in recognizing a damages action, including deference to legislative judgment, avoidance of adverse policy consequences, considerations of government fiscal policy, practical issues of proof, and competence of courts to assess particular types of damages." (Id. at 329).

        The Katzberg analysis is applicable to this case insofar as it decided, under the first step described above, that there is no evidence in the language or history of article I, § 7(a) – the due process provision – from which the Supreme Court found "an implied right to seek damages[.]" See Katzberg, 29 Cal.4th at 324. The question remains, then, "whether a constitutional tort action for damages to remedy the asserted constitutional violation should be recognized." Id. at 324; see also San Joaquin, 898 F.Supp.2d at 1190 ("the Court in Katzberg found that 'courts, exercising their authority over the common law, may, in appropriate circumstances, recognize a tort action for damages to remedy a constitutional violation.') (citation omitted). Given the paucity of case law finding monetary damages available for constitutional violations in California, and given that "a deprivation of property is a less egregious loss than a loss of liberty," San Joaquin, 898

1 F.Supp.2d at 1190, the court concludes that no claim for money damages for violation of the
2 excessive fines clause of the California Constitution is available under the circumstances of this
3 case.

4 Whether this also forecloses plaintiffs' claims for "restitution of the amounts of any penalties
5 and collection fees paid to the City," (see FAC at ¶ 64), is a more difficult question. On the one
6 hand, the California Supreme Court has noted the "traditional distinction between restitution and
7 damages[.]" See, e.g., Cortez v. Purolator Air Filtration Prods. Co., 23 Cal.4th 163, 172 (2000).
8 Further, common sense suggests that returning any sums of money collected is an appropriate
9 remedy in a case alleging that the sums were unconstitutionally high. On the other hand,
10 however, as the City points out, "[p]ublished decisions cannot be found in which a party paid a
11 fine, then obtained a ruling that the fine violated the 'Excessive Fines' prohibition . . . and was for
12 that reason refunded that portion of the fine which was not constitutionally excessive." (See
13 Motion at 10). There are cases, for example, in which an appeals court has found that a certain
14 fine imposed by a lower court is constitutionally excessive and orders the fine reduced. See, e.g.,
15 People v. Blackburn, 72 Cal.App.4th 1520, 1524 (1999) (finding that the fine "was in excess of the
16 statutory maximum[,] and modifying it "by reducing the fine" by 50%). Yet, plaintiffs offer no case
17 law, nor has the court found any, in which a California court required a public entity to return
18 money paid to it because the money was paid in violation of the excessive fines clause. (See,
19 generally, Opp'n).

20 Under the circumstances, the court will dismiss plaintiffs' request for restitution under
21 California's excessive fines clause with leave to amend. If plaintiffs re-allege this claim in their
22 Second Amended Complaint, they should consider this issue more carefully, i.e., not Katzberg's
23 holding regarding liberty interests, but the availability of a restitution remedy for the specific
24 constitutional claim alleged here.

IV. CALIFORNIA CLAIMS FILING REQUIREMENTS.

26 Finally, the City seeks to dismiss the substantive state law claims asserted by the additional
27 plaintiffs because they failed to comply with the California Tort Claims Act. (See Motion at 15-16).
28 Cal. Gov. Code § 945.4 provides that "no suit for money or damages may be brought against a

16

public entity . . . until a written claim therefor has been presented to the public entity[.]" Unless a specific exception applies, '[a] suit for 'money or damages' includes all actions where the plaintiff is seeking monetary relief, regardless whether the action is founded in tort, contract or some other theory." Lozada v. City and Cnty. of San Francisco, 145 Cal.App.4th 1139, 1152 (2006) (internal quotation marks and citations omitted).

The court need not reach this issue, as the court has dismissed all of plaintiffs' monetary claims under the California Constitution. Yet, even if they survived or if plaintiffs re-allege the claims in an amended complaint, "'claimant,' as used in section 910 [of the California Tort Claims Act], must be equated with the class itself and therefore [courts] reject the suggested necessity for filing an individual claim for each member of the purported class." City of San Jose v. Super. Ct., 12 Cal.3d 447, 457 (1974). As defendant acknowledges, Pimentel and Welch have complied with the reporting requirements of the California Tort Claims Act. (See Motion at 16).

**This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

### CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Defendant's Motion to Dismiss the First Amended Complaint for Failure to State a Claim for Which Relief May be Granted **(Dkt. No. 32)** is **granted in part** and **denied in part**, as follows:

    A. The Motion is **denied** with respect to Plaintiffs' first cause of action for violation of the Excessive Fines provision of the federal Constitution;

    B. The Motion is **granted** with respect to Plaintiffs' second cause of action for violation of the Excessive Fines provision of the California Constitution, but only to the extent that it seeks monetary relief; and

    C. The Motion is **granted** with respect to Plaintiffs' third and fourth causes of action for violations of the due process clauses of the federal and California Constitutions. These claims are dismissed with prejudice.

2. Plaintiffs are granted until **October 12, 2015** to file a Second Amended Complaint attempting to cure the defects outlined by the court above.

3. The Second Amended Complaint must be labeled "Second Amended Complaint," filed in compliance with Local Rule 3-2 and contain the case number assigned to the case, i.e., Case No. CV 14-1371 FMO (Ex). In addition, plaintiffs are informed that the court cannot refer to a prior pleading in order to make their Second Amended Complaint complete. Local Rule 15-2 requires that an amended pleading be complete in and of itself without reference to any prior pleading. This is because, as a general rule, an amended pleading supersedes the original pleading. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967), overruled in part, Lacey v. Maricopa Cnty., 693 F.3d 896 (9th Cir. 2012) (en banc).

4. Plaintiffs are cautioned that failure to timely file a Second Amended Complaint may result in this action being dismissed without prejudice for failure to prosecute and/or failure to comply with a court order. See Fed. R. Civ. P. 41(b); Link v. Wabash R.R. Co., 370 U.S. 626, 629-30, 82 S.Ct. 1386, 1388 (1962).

5. Defendant shall file its Answer to the Second Amended Complaint or another motion pursuant to Fed. R. Civ. P. 12 no later than **October 26, 2015**.

6. In the event defendant wishes to file another motion to dismiss, then counsel for the parties shall, on **October 19, 2015**, at 10:00 a.m.[6] to discuss defendant's motion to dismiss. Defendant's motion must include copies of all meet and confer letters as well as a declaration that sets forth, in detail, the entire meet and confer process (i.e., when and where it took place, how long it lasted and the position of each attorney with respect to each disputed issue that will be the subject of the motion). Failure to include such a declaration will result in the motion being denied. Dated this 29th day of September, 2015.

/s/
Fernando M. Olguin
United States District Judge

---

[6] Counsel may agree to meet and confer at another time and place without seeking court approval for such an agreement.