Donald G. Norris (SBN 90000)
dnorris@norgallaw.com
Douglas F. Galanter (SBN 93740)
dgalanter@norgallaw.com
NORRIS & GALANTER LLP
523 West Sixth St., Suite 716
Los Angeles, CA 90014
Telephone: 213.232.0855
Facsimile:  213.286.9499

BLECHER COLLINS PEPPERMAN & JOYE, P.C.
MAXWELL M. BLECHER (SBN 26202)
mblecher@blechercollins.com
Donald R. Pepperman (SBN 109809)
dpepperman@blechercollins.com
Theo "John" Giovanni Arbucci (SBN 249811)
jarbucci@blechercollins.com
515 South Figueroa Street, 17th Floor
Los Angeles, California 90071-3334
Telephone: 213.622-4222
Facsimile:  213.622.1656

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS PIMENTEL, DAVID R. WELCH, JEFFREY O'CONNELL, EDWARD LEE, WENDY COOPER, JACLYN BAIRD, ANTHONY RODRIGUEZ, RAFAEL BUELNA, ELEN KARAPETYAN, and all persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES,<br><br>Defendant. | Case no. CV 14-01371-FMO (Ex)<br><br>SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES, RESTITUTION, DECLARATORY AND INJUNCTIVE RELIEF FOR:<br><br>1. VIOLATIONS OF THE EXCESSIVE FINES CLAUSE OF THE UNITED STATES [42 U.S.C. § 1983];<br><br>2.  VIOLATION OF THE EXCESSIVE FINES CLAUSE OF THE CALIFORNIA CONSTITUTION |

Plaintiffs, individually and on behalf of the class of similarly situated persons identified in this second amended complaint, allege as follows:

JURISDICTION AND VENUE

1.    This is a class action seeking damages, restitution and declaratory and injunctive relief for violations by the City of Los Angeles of the Excessive Fines Clause of the United States Constitution and the analogous provisions of the California Constitution, arising from the City charging those who receive tickets for expired parking meters disproportionally excessive penalties.

2.    The action arises under 42 U.S.C. §1983.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.  Supplemental jurisdiction exists over plaintiffs' state law claims under 28 U.S.C. § 1367.

3.    In July 2013 plaintiffs Jesus Pimentel and David R. Welch duly served claims against defendant under the appropriate California Government Code sections.  On information and belief, defendant failed to timely respond, so those claims were denied as a matter of law.

4.    Venue is proper under 28 U.S.C. § 1391(b).

PARTIES

5.    Plaintiffs Jesus Pimentel, David R. Welch, Edward Lee, Jaclyn Baird, Anthony Rodriguez, Rafael Buelna and Elen Karpetyan are individuals residing in the City of Los Angeles or other parts of the County of Los Angeles.

6.    At all times herein mentioned defendant City of Los Angeles ("City") was and is a municipal corporation duly organized and existing under the laws of the State of California.

FACTS

7.    Plaintiff Jesus Pimentel ("Pimentel") worked for restaurants in 2013 in the City of Los Angeles.  His job duties required him to pick up and deliver food and other supplies, so he frequently had to search for parking and park on City streets. On the afternoon of May 29, 2013 plaintiff Pimentel parked his car

on Eighth Street in downtown Los Angeles.  Pimentel paid the parking meter where he parked a sum of money he estimated would be sufficient to cover the time period that he intended to park. On information and belief at approximately 3:10 p.m. that same afternoon a City employee issued parking citation number 4207863903 to Pimentel for an expired parking meter under section 88.13(b) of the Los Angeles Municipal Code (the "Code") because the parking meter had expired. Under section 89.60 of the Code the initial penalty was set at $63.00.

8.    On or about June 21, 2013 the City issued and then mailed to Pimentel a Notice of Delinquent Parking Violation advising that the due date to pay the initial $63.00 penalty was July 5, 2013.  Said Notice also warned that failure to pay the parking penalties by the due date "will result in the City of Los Angeles imposing increased penalties and the withholding of your vehicle registration by the Department of Motor Vehicles." The Notice further advised that the "City may also subject your vehicle to immobilization (booting) or impoundment (CVC 22651.7, 22651(i), or a civil judgment (CVC 40220)."

9.    Pimentel did not pay the initial $63.00 penalty by the July 5, 2013 due date because he did not then have the funds to pay without jeopardizing his ability to pay more critical financial obligations. On information and belief the City then likely mailed another notice to Pimentel on a date unknown to plaintiffs assessing an additional 100% penalty, pursuant section 89.60 of the Code, so that the cumulative penalties increased to $126.00.  Pimentel did not pay that sum at that time due to financial hardship.

10.    Because Pimentel had not paid the $126.00, on information and belief, or about August 23, 2013 the City mailed Pimentel a "Delinquent Status" notice under section 89.60(b) of the Code, which purported to impose an additional, third penalty of $28 under section 89.60(b) of the Code (although that section provides for an additional penalty of $26), increasing the "total fine and penalty" to $154.00. This notice further assessed an additional $21.00

"collection fee" on Pimentel, and advised that the "total due" was $175.00.  The notice further advised that "**The Department of Motor Vehicles has been notified to withhold registration of your annual vehicle registration** pending resolution of the citations" and that "If you have delinquent citations, your vehicle may be seized." Finally, the notice advised that failure could subject Pimentel "to further collection activity such as a civil judgment or an interception of your state tax refunds."  Pimentel did not pay that sum at that time due to financial hardship.

11.   Pimentel eventually paid the $175.00 "total due" to the Department of Motor Vehicles due to the threat and coercion of not being able to register his car.

12.    On the morning of February 25, 2013 plaintiff David R. Welch ("Welch") parked his car in downtown Los Angeles. Welch paid the parking meter where he parked a sum of money he estimated would be sufficient to cover the time period he intended to park. On information and belief at approximately 10:13 a.m. that same morning a City employee issued parking citation number 4202676203 to Welch for an expired parking meter under section 88.13(b) of the Los Angeles Municipal Code (the "Code") because the parking meter had expired. As with the case of Pimentel, under section 89.60 of the Code the initial penalty was set at $63.00.

13.   On information and belief, within the following 30 days it is likely that the City issued and then mailed to Welch a "Notice of Delinquent Parking Violation" advising as to the due date to pay the ticket.  Said Notice also warned that failure to pay the parking penalties by the due date "will result in the City of Los Angeles imposing increased penalties and the withholding of your vehicle registration by the Department of Motor Vehicles." The Notice further advised that the "City may also subject your vehicle to immobilization (booting) or impoundment (CVC 22651.7, 22651(i), or a civil judgment (CVC 40220)."

14.   Welch did not pay the initial $63.00 penalty by the due date. On information and belief the City then likely mailed another notice to Welch on a date unknown to plaintiffs, assessing, as occurred with Pimentel, an additional 100% penalty, pursuant section 89.60 of the Code, so that the cumulative penalties increased to $126.00.

15.   Because Welch had not paid the $126.00, on or about May 23, 2013 the City mailed Welch a "Delinquent Status" notice under section 89.60(b) of the Code (as it did as to Pimentel), which purported to impose an additional third penalty of $28 under section 89.60(b) of the Code (although that section provides for an additional penalty of $26), increasing the "total fine and penalty" to $154.00.  This notice assessed an additional $21.00 "collection fee" on Welch, and advised that the "total due" was $175.00.  The notice further advised that "**The Department of Motor Vehicles has been notified to withhold registration of your annual vehicle registration** pending resolution of the citations" and that "If you have delinquent citations, your vehicle may be seized." Finally, the notice advised that failure could subject Welch "to further collection activity such as a civil judgment or an interception of your state tax refunds."

16.   On or about July 30, 2013, Welch paid the $175.00 "total due," due to the threats and coercion of not being able to register his car, having his car impounded, being referred to collections and receiving a negative credit report.

17.   On information and belief, at all relevant times the City's uniform procedures have been to assess the parking fines and penalties for alleged violation of section 89.60 of the Code and to send the notices for said violation and to timely pay fines and penalties that are alleged above as to Pimentel and Welch.

18.   During the times relevant hereto plaintiff Jeffrey O'Connell ("O'Connell") was self-employed as a professional musician, and as a

handyman. O'Connell needed his vehicle to transport himself and his drums and other musical equipment to and from locations where he practiced or performed music, and to transport himself and tools to and from locations where he performed repairs as a handyman.

19.   O'Connell received several parking meter tickets in the City during the past two years, which incurred the same fines and penalties as those alleged as to Pimentel and Welch.  In some cases O'Connell received tickets as to parking meters that were broken, out of order or that would not accept money. O'Connell did not have the financial wherewithal to pay these tickets, or the penalties and fees assessed as to them.

20.   O'Connell eventually entered into an installment payment plan with the City to pay these, and some other parking tickets that he received, but ultimately he was financially unable to make the scheduled payments. Due to the number of unpaid tickets, including the parking meter tickets he received, O'Connell's car was towed by the City and impounded. O'Connell did not have the financial wherewithal to pay to retrieve his vehicle.  O'Connell has suffered lost income and financial hardship as a result of not having his vehicle.

21.   Plaintiff Edward Lee ("Lee"), a resident of the City of Burbank, a former United States Marine, worked as a security guard starting in 2004, until being laid off recently. Lee needed a vehicle to travel to and from work locations.

22.   Lee received multiple parking meter tickets in the City in 2013.  Lee struggled to make ends meet.  Lee made payments on the parking meter tickets, but he could not afford to pay them on time.  Nor could or can Lee afford the late penalties and fees imposed by the City.

23.   Plaintiff Wendy Cooper ("Cooper"), who resides in the Sherman Oaks neighborhood of the City, received a ticket in 2013 for an expired parking meter in the Studio City neighborhood of the City, citation no. 4220759830.

During August of 2013, her elderly father became extremely ill, and then died on December 1, 2013.  Do to these extenuating circumstances, Cooper missed the due date for paying the ticket due to her elderly father (who died in December 2013) becoming gravely ill.

24.   Cooper makes a modest income as a self-employed musical voice teacher.  Paying the late penalties and fees would be financially difficult for Cooper.  On January 2, 2014, Cooper contacted the City Parking Violations Bureau and requested that the late penalties and fees be waived. Cooper was advised to send a letter explaining her situation and to include payment for the original penalty amount of $63, along with proof of her father's circumstances, which she did. Cooper, however, received no response to her letter.

25.   Plaintiff Jaclyn Baird ("Baird") is a young woman who moved to Los Angeles from Montana after graduating from school in May 2013.  Baird received approximately three City parking meter tickets shortly thereafter in the area near the beach where she was living, where parking is scarce. Baird could not afford to pay the tickets and still pay her rent and other necessary expenses. Baird later was unable to register her car because of the ticket penalties and fees assessed by the City.

26.   Baird then moved to the Hollywood area where parking is also hard to come by. On January 17, 2014 Baird received a parking meter violation ticket at 1802 Sunset Boulevard in the Echo Park area.  Because Baird was unable to pay the ticket on time she had to pay $151, which imposed a financial hardship on her.

27.   On February 2, 2014 Baird received a parking violation meter ticket at 1165 Lemoyne Street in the Echo Park area. Because she was unable to pay the initial penalty on time, Baird was assessed an additional $63 and then paid a total of $126, which imposed a financial hardship on her.  On May 14, 2014 and

May 23, 2014 Baird received additional parking meter tickets near Hollywood which she was financially unable to pay.

28.   Baird's car was then impounded due in substantial part to not paying her parking meter tickets, and the penalties and fees assessed on them.  Baird could not pay the approximately $1300 required to release her vehicle. Baird suffered further damages as a result of her vehicles being impounded.

29.   Plaintiff Anthony Rodriguez ("Rodriguez") is a veteran living in the Mission Hills neighborhood of the City. Rodriguez received a ticket for an expired parking meter on January 22, 2014 at 11039 McCormick Street in the North Hollywood area of the City, citation no. 4225588791.  Rodriguez received the ticket even though he had put sufficient coins in the parking meter to cover the time period that he parked.

30.   Within 15 days of issuance of the ticket Rodriguez went to the Van Nuys office of the City Parking Violations Bureau to contest the ticket. Rodriguez filled out and submitted an "Initial Review Request."  He also requested a copy of the parking meter service record and the citing officers' performance record.

31.   Even though he had paid with coins and not a credit card, approximately one week later, Rodriguez received a letter in the mail from the Parking Violations Bureau requesting that he provide his credit card statement showing payments made to the City for parking at the meter on January 22, 2014.

32.   Eventually the City responded to Rodriguez's review request with a denial that the meter had been operating improperly.  Because Rodriguez had provided plaintiffs' counsel's name and address to the City its response was mailed to counsel's address after the date this action was filed.  In that connection the City decided to waive late penalties on the ticket. But Rodriguez was still required to pay the initial $63 penalty (plus a $2 processing fee), which

he paid on May 2, 2014, due to the threats and coercion of not permitting his car to be registered, having his car impounded, being reported to collections and receiving a negative credit repeort.  Said payment imposed a financial hardship on him.

33.   On January 17, 2014 plaintiff Rafael Buelna ("Buelna") received a parking ticket for an expired meter from the City, citation 4224433905, at 3150 Los Feliz Boulevard.  However, Buelna had clearly displayed his disabled placard, which was hanging from the rear view mirror, so he should not have received the ticket.

34.   Buelna lives on a fixed income of $1110 per month from Social Security Disability. After paying $835 for rent, Buelna is left with $276 for the rest of the month to live on.  Buelna planned to pay the initial $63 fine on his parking ticket by April 2014 by saving $20 from three Social Security checks. However, by March 21, 2014 the fine/penalty had doubled.  Recently the City sent notice that the total allegedly owed is $175.  Such a sum imposes an egregious hardship as to Buelna.

35.   Plaintiff Elen Karapetyan ("Karapetyan") is a college student who also works.  She received six parking meter violation tickets from the City on the following dates: 09/10/13, 09/12/13, 10/10/13, 11/06/13, 12/03/13 and 12/04/13.  Karapetyan could not afford to pay these tickets timely, so the City assessed $175 in penalties and fees as to each of them.  Karapetyan then paid off two of those $175 charges, under the threats and coercion of not being able to register her vehicle, having her vehicle impounded, being referred to collections and receiving a negative credit report.  Paying the remainder of the tickets imposed a financial burden on her.

36.   On information and belief the aforesaid penalties under section 89.60 of the Code were established by the City through its City Council within the last four years, as part of a schedule of civil parking penalties (the "Schedule").  At

that same time the penalties were established under section 89.60 for failing to pay a parking meter and for an expired parking meter.

37.   On information and belief, the parking penalties set by the Schedule greatly exceed the amounts for penalties established by the City in prior years for the same parking violations, reflecting an approximate 50% increase.  On information and belief, the City was in substantial part improperly motivated to increase the amount of parking penalties on the Schedule in order to increase its revenues and improve its fiscal situation in response the fallout from the 2008-2009 economic crisis.

38.   California Vehicle Code section 40203.5 subdivision (a) empowers the governing body of a municipal entity to establish the schedule of parking penalties for parking violations and late payment penalties.  That provision further directs such governing bodies to "standardize parking penalties" with other parking ticket issuing agencies within the same county, to the extent possible." On information and belief, the City in its Schedule charges substantially higher penalties than many neighboring cities in Los Angeles County have charged during the relevant time period.  For example, on information and belief, the City of Pasadena has charged $46.00 for an initial parking meter penalty and an additional $27.90 penalty for failure to timely pay the initial penalty.  The $73.90 Pasadena total is $52.10 less than the $126.00 total for the City.  Similarly, on information and belief, the City of Glendale has charged an initial $44.00 penalty for a parking meter violation and another $44.00 for failure to timely pay the initial penalty. The $88.00 Glendale total is $38.00 less than the $126.00 total for the City.  Plaintiffs do not concede that the penalties assessed by Pasadena and Glendale are not likewise grossly disproportionate to the underlying offenses, but this comparison of their charges is instructive as to the disproportionality of the City's penalties.

39.   According to City-Data.com, the median per capita income in the City was $26,096 for all residents in 2009 and $13,542 for Hispanic/Latinos. According to that source the median household income in 2009 was $48,617 (and $38,868 for Hispanic/Latino households), with 8.2% earning less than $10,000, 13.1% earning between $10,000 and $20,000, 11.2% earning between $20,000 and $30,000, 9.9% earning between $30,000 and $40,000, and 8.9% earning between $40,000 and $50,000.  These figures have not significantly increased since 2009.  The rate of poverty in the City substantially increased since 2008 and remains at historically elevated levels.

40.   At all relevant times the unemployment rate in the City has been at historically very high levels, and continues at very high rates. The cost of housing in the City is also very high relative to many other parts of California and most other states.

41.   As to those who either reside or work in the City, at all relevant times up to June of 2014, the minimum hourly wage was $8.00 under California state law, a sum subject to substantial paycheck tax deductions and contributions required by law.  The $63 initial penalty set by the City for parking meter violations was at all relevant times essentially equivalent to the wages of a worker who earned the minimum wage and working an eight-hour day.  The 100% penalty the City has assessed for the failure to timely pay the initial penalty is likewise equivalent to the wages of a worker earning the minimum wage and working an eight-hour day.  The $175 sum assessed if the $126 in penalties are not timely paid approaches the wages of a worker earning that minimum wage and working three eight-hour days, and well exceeds those wages, net of tax deductions and contributions required by law.

42.   A very substantial percentage of person who receive City expired parking meter tickets, many of whom live paycheck to paycheck if they work at all, are financially unable to pay the $63 initial penalty, or the second $63

1   penalty, let alone the $175 "total due" amount that accompanies a City

2   "Delinquent Status" notice.

3       43.   In fact, in the context of permitting an individual to request an

4   "Administrative Hearing" as to the validity of a ticket (that is, after denial of an

5   "initial review"), without first paying the penalties due, the website of the City's

6   Parking Violation Bureau/Department of Transportation Parking Adjudication

7   Services defines a member of a "low income household" as an individual (1)

8   receiving public assistance agency benefits, (2) whose family gross yearly

9   income is less than $39,000 for a one-person family, less than $44,500 for two

10  people, less than $50,100 for three people, and less than $55,700 for four people,

11  or (3) whose income is not enough to pay for the common necessities of life for

12  the person and the people the person supports and also pay for parking fines.

13  These very same criteria establish that a very high percentage of the persons

14  who receive parking meter tickets are financially unable to pay them, or the late

15  penalties and fees assessed as to them.

16      44.   On information and belief, the City charges variable rates to purchase

17  parking time at its parking meters depending on the meter's location or "zone."

18  For example, in downtown's financial district meters may charge more to park.

19  But, on information and belief, even at the higher zone rates a person paying for

20  meter parking can purchase six minutes of time for $.50, 18 minutes of time for

21  $1.50, 30 minutes of time for $3.00, and an hour of time for $5.00.  Under those

22  rates, a person receiving a City parking meter ticket for an expired meter who is

23  less than six minutes over the purchased time could have avoided the ticket by

24  paying an additional $.50, a person receiving a City parking meter ticket for an

25  expired meter who is just under 18 minutes over the purchased time could have

26  avoided the ticket by paying an additional $1.50, a person who receives a City

27  parking meter ticket for an expired meter who is just under 30 minutes over the

28  purchased time could have avoided the ticket by paying an additional $3.00, and

a person receives a City parking meter ticket for an expired meter who is just
under an hour over the purchased time could have avoided the ticket by paying
and additional $5.00.  In most cases, the City's $63.00 initial penalty for an
expired parking meter ticket bears no reasonable relationship to the culpability
of persons who receive parking meter expiration tickets:  the penalty is 130
times the additional amount a person who is less than five minutes over the
meter would have had to pay to avoid the ticket, over 43 times the additional
amount a person who is less than 18 minutes over the meter would have had to
pay to avoid the ticket, 21 times the additional amount a person who is less than
30 minutes over the meter would have had to pay to avoid the ticket, and over
12 times the additional amount a person who is less than 60 minutes over the
meter would have had to pay to avoid the ticket.  In lower zone areas where it is
cheaper to park these multipliers necessarily are proportionally higher.
Moreover, the second 100% $63 late payment penalty effectively doubles the
above multipliers.

45.   The parking meter expiration penalties are unreasonable and
oppressive, and grossly disproportionate to the seriousness of the violation of the
City ordinance barring parking at a meter beyond the time paid to park, as well
as to those who receive tickets for parking at a meter without paying at all.
Imposition of these penalties is particularly onerous as to and disproportionately
affects low income or even average income workers in the Los Angeles area, as
well as those low income persons who do not work, relative to those better off
financially, because they are not as well positioned to pay the penalties or the
collection fees, and disproportionately suffer financial injury if they do pay
them.  Such persons also disproportionately suffer the inability to register a
vehicle, vehicle impoundment or booting, the City reporting such persons to
credit reporting bureaus, and the City's pursuit of civil judgments for failure to
pay.

CLASS ACTION ALLEGATIONS

46.   This action is brought as a class action by the individual named as plaintiffs, on behalf of themselves and on behalf of the class defined in this complaint, pursuant to Rule 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure.

47.   This class is defined as all persons who are or were assessed and/or paid the penalties under the Schedule for parking at an unpaid or expired meter described above. Excluded from the class are all employees, including, but not limited to, judges, magistrate judges, clerks and court staff and personnel, of the United States District Court, their spouses, and any minor children living in their households.  Plaintiffs will seek to establish subclasses under Federal Rule of Civil Procedure 23(c)(5) if and when appropriate.

48.   The proposed class meets the prerequisites of Fed. R. Civ. P. 23. Rule 23(a) provides that a class action may be brought when the class is so numerous that joinder of all parties is impracticable, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the class. This action is properly maintainable as a class action for the reasons set forth below.

49.   The exact numbers of members of the class identified in the preceding paragraphs, for whose benefit this action is brought, are not presently known but are so numerous that joinder of individual members in this action is impracticable. The exact number of class members can only be ascertained through discovery, because such information is in the exclusive control of City. However, on information and belief, and based on the nature of the activities alleged herein, plaintiffs reasonably believe that the proposed class would contain thousands if not tens of thousands of members. The names and addresses of class members are readily obtainable from the City.

-14-

51.     There is a well-defined community of interest in the questions of law and fact with regard to the proposed classes. Questions of law and fact arising out of the City's conduct are common to all members of the class, and such common issues of law and fact predominate over any questions affecting only individual members of the class. Common issues of law and fact which are common to all members of all classes include: (a) Whether the parking penalties assessed by the City constitute "excessive fines" under the United States and California constitutions; (b) appropriate equitable relief; (c) whether the City should refund the unlawful portion of the payments it collected as damages or restitution; (d) whether unpaid assessed penalties should be forgiven; and (e) whether the City should be enjoined from further collection of said penalties and collection fees.

52.     The class representative plaintiffs are asserting claims that are typical of the claims of the members of the class they seek to represent, in that they all have been assessed and/or have paid the unconstitutional parking penalties. There is no conflict between any class representative and other members of the class with respect to this action, and the class representative plaintiffs are not aware of any individualized defenses that may be raised by the City that impair each representative's ability to act on behalf of the class. Plaintiffs as representative parties, will fairly and adequately protect the interests of the class by vigorously pursuing this suit through attorneys who are skilled and experienced in handling matters of this type.  Plaintiffs understand and appreciate their duties to the class and are committed to vigorously protecting the rights of absent class members.

53.     By consistently assessing and insisting on payment of the unlawful penalties the City has acted on grounds generally applicable to the class, thereby making declaratory and injunctive relief appropriate with respect to the class as a whole. See Fed. R. Civ. P. 23(b)(2).

54.   Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3). The questions of law or fact common to each member of the class predominate over any questions affecting only individual members. A class action is superior to other available methods for a fair and efficient adjudication of the claims asserted herein given that, among other things: (i) significant economies of time, effort, and expense will inure to the benefit of the Court and the parties in litigating the common issues on a class-wide instead of a repetitive individual basis; (ii) the size of most class members' individual damage claims is too small to make individual litigation an economically viable alternative, such that few class members have any interest in individually pursuing prosecution of a separate action; (iii) without the representation provided by plaintiffs herein, few, if any, class members will receive legal representation or redress for their injuries; (iv) class treatment is required for optimal deterrence; (v) despite the relatively small size of many individual class members' claims, their aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost effective basis, especially when compared with repetitive individual litigation; (vi) no unusual difficulties are likely to be encountered in the management of this class action; (vii) absent a class action, the City will likely retain and will continue to collect millions of dollars, and its illegal and unfair conduct would go unremedied and uncorrected; and (viii) absent a class action, the class members will continue to suffer losses, and the City will be allowed to continue to assess and collect illegal penalties.

55.   Plaintiffs contemplate such notice to the class as may be appropriate under Fed. R. Civ. P. 23(c)(2).

FIRST CLAIM FOR RELIEF UNDER 42 U.S.C. § 1983

FOR VIOLATION OF THE EIGHTH AND FOURTEENTH

AMENDMENTS TO THE UNITED STATES CONSTITUTION

(by individual plaintiffs and plaintiff class)

56.     Plaintiffs repeat and reallege and incorporate by reference each and every allegation in paragraphs 1 through 55, inclusive, of this complaint as if fully set forth herein.

57.     In light of the minor nature of the violations and their financial effect on members of the plaintiff class, the aforementioned parking penalties are punitive in nature, and are grossly excessive and disproportionate, particularly when accumulated and/or added to the $21.00 "collection fee," and given the City's threats of an inability to re-register a vehicle, vehicle booting and impoundment, and referral to collections and a credit reporting bureau.  The dollar amount and enforcement of these penalties constitute a violation of the prohibition in the Eighth Amendment to the United States Constitution of excessive fines, as incorporated to the states in the Fourteenth Amendment.

58.     As a direct result of said constitutional violations on the part of the City plaintiffs and members of the plaintiff class have suffered and will suffer damages,  including, but not limited to, the loss of money and property, and the loss of use and enjoyment of their vehicles.

59.     Plaintiffs and the members of the plaintiff class will suffer immediate and irreparable injury for which there is no adequate remedy at law if the aforementioned penalties and policies to enforce them are allowed to continue. Plaintiffs and the class members seek injunctive relief, both preliminary and permanent, to stop the City unlawful conduct described above.

60.     There is a real and actual controversy between the parties as to whether the parking meter penalties described above and their enforcement violate the Eighth and Fourteenth Amendment's prohibition of excessive fines.

Plaintiffs maintain that the penalties and their enforcement violate the excessive fines clause of the Eighth and Fourteenth Amendments, which the City disputes. This imposition of, and continued effort to collect, these penalties constitutes a legal injury which is concrete and particularized. It is likely that these injuries will be fairly addressed by a favorable Court ruling. Plaintiffs and the members of the plaintiff class therefore seek declaratory relief in order to declare the penalty scheme unconstitutional, and that they did not and do not owe and need not pay said penalties and attendant collection costs, and are entitled to restitution of them if they were paid.

SECOND CLAIM FOR RELIEF

FOR VIOLATION OF THE EXCESSIVE FINES PROVISION OF

ARTICLE 1, SECTION 17 OF THE CALIFORNIA CONSTITUTION

(by individual plaintiffs and plaintiff class)

61.     Plaintiffs repeat and reallege and incorporate by reference each and every allegation in paragraphs 1 through 60, inclusive, of this second amended complaint as if fully set forth herein.

62.     This claim for relief is brought under the California Constitution.

63.     The dollar amount and enforcement of the penalties constitute a violation of the prohibition in the Article 1, Section 17 of the California Constitution against the imposition of excessive fines.

64.     The City has been unjustly enriched to the extent plaintiffs and members of the plaintiff class paid penalties and collection fees that violated Article 1, Section 17 of the California Constitution.

65.     Plaintiffs and the members of the plaintiff class will suffer immediate and irreparable injury for which there is no adequate remedy at law if the aforementioned penalties and policies to enforce them are allowed to continue. Plaintiffs and the class members seek injunctive relief, both preliminary and permanent, to stop the City unlawful conduct described above.

-18-

66.     There is a real and actual controversy between the parties as to whether the parking meter penalties described above and their enforcement violate the prohibition in Article 1, Section 17 of the California Constitution against the imposition of excessive fines. This imposition of, and continued effort to collect, these penalties constitutes a legal injury which is concrete and particularized. It is likely that these injuries will be fairly addressed by a favorable Court ruling. Plaintiffs and the members of the plaintiff class therefore seek declaratory relief in order to declare the penalty scheme unconstitutional, that they did not and do not owe and need not pay the penalties and attendant collection fees, and are entitled to restitution of them if they were paid.

PRAYER

WHEREFORE, plaintiffs pray for judgment against defendant, as follows:

1.     That the Court determine that the claims for relief herein may be maintained as a class action;

2.     for injunctive relief prohibiting defendant's unlawful fines and fine enforcement practices;

3.     for declaratory relief;

4.     for damages as to the First Claim for Relief, according to proof;

5.     for restitution;

6.     for pre-judgment interest; and

7.     for costs of the suit incurred herein, including attorney fees and other expenses pursuant to 42 U.S.C. § 1988 and California Code of Civil Procedure § l021.5; and

8.     for such other and further relief as the Court may deem just and proper.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  October 12, 2015         NORRIS & GALANTER LLP

BLECHER COLLINS PEPPERMAN & JOYE,

P.C.

By _____/s/_____
        Donald G. Norris
        Attorneys for plaintiffs